**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| LEVOY JOSEPH BENNETT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HATHAWAY DEVELOPMENT, LLC, a Foreign limited liabiliy company, ENGLAND-THIMS & MILLER, INC., a Florida profit corporation, HATHAWAY CONSTRUCTION SERVICES, INC., a Foreign profit corporation,<br><br>Defendants. | Case No. |

**<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>**

Comes now LEVOY JOSEPH BENNETT ("Plaintiff"), by and through counsel, and alleges as follows:

## I. <u>INTRODUCTION</u>

1. Plaintiff brings this action against HATHAWAY DEVELOPMENT, LLC, ENGLAND-THIMS & MILLER, INC., and HATHAWAY CONSTRUCTION SERVICES, INC. ("Defendants") alleging violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601-3619 with regard to lack of accessibility and usability at Defendants' apartment complex, EXCHANGE

AT CEDAR CREEK Apartments, 14105 Epply Drive, Jacksonville, FL 32218 (the "Property").

2. Plaintiff seeks declaratory monetary, and injunctive relief arising from violations of the accessibility requirements of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. § 3601-3619. The FHA requires that certain multifamily dwellings and apartment complexes built for first occupancy after March 13, 1991 be designed and constructed with accessible and usable features for people with disabilities.

3. Plaintiff is a handicapped individual that uses a wheelchair. Plaintiff brings this civil rights action against Defendants for failing to design and/or construct apartments with accessible and useable features for people with disabilities as required by the FHA. The Property is a multi-family dwelling comprised of multiple buildings served by an elevator that has numerous barriers to access and use. Therefore, Plaintiff seeks a declaration that Defendants' apartment complex violates federal law and an injunction requiring the Defendants to comply with the requirements of the FHA.

4. The Defendants' violations of the FHA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities and rendered units and/or facilities unavailable to people with disabilities. Enforcement of the FHA against Defendants is necessary because of the extensive nature of the civil rights violations at multifamily dwellings and apartments designed, developed, constructed or owned by Defendants.

## II. JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §§ 3613(a). Plaintiff asserts no state law claims.

6. Plaintiff's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## III. PARTIES

8. Plaintiff, LEVOY JOSEPH BENNETT is and, at all times relevant hereto, was a resident of the State of Florida. Plaintiff is, and at all times relevant hereto, has been legally handicapped and is therefore a member of a protected class under the FHA.

9. Defendant, HATHAWAY DEVELOPMENT, LLC is a Foreign limited liability company. Upon information and belief, Hathaway Development, LLC is an owner and developer of the Property. Upon information and belief, Hathaway Development, LLC participated in the design and construction of the Property.

10. Upon information and belief, Hathaway Development, LLC had sufficient control and authority to direct, supervise, and correct the design and construction of the Property and to undertake to remedy inaccessible features at the

subject property so that the Property, and the dwelling units and the public and common use areas at the Property, would be accessible to people with disabilities.

11. Defendant HATHAWAY CONSTRUCTION SERVICES, INC. is a Foreign profit corporation. Upon information and belief, Hathaway Construction Services, Inc. was the owner and general contractor for Property. Upon information and belief, Hathaway Construction Services, Inc. participated in the design and construction of the Property. Upon information and belief, Hathaway Construction Services, Inc. hired various contractors and professionals to develop and build the Property.

12. Upon information and belief, Hathaway Construction Services, Inc. had sufficient control and authority to direct, supervise, and correct the design and construction of the Property and to undertake to remedy inaccessible features at the subject property so that the Property, and the dwelling units and the public and common use areas at the Property, would be accessible to people with disabilities.

13. Defendant ENGLAND-THIMS, & MILLER, INC. is a Florida profit corporation. Upon information and belief, England-Thims & Miller, Inc. was the architect for Property. Upon information and belief, England-Thims & Miller, Inc. participated in the design and construction of the Property.

14. Upon information and belief, England-Thims & Miller, Inc. had sufficient control and authority to direct, supervise, and correct the design and construction of the Property and to undertake to remedy inaccessible features at the

subject property so that the Property, and the dwelling units and the public and common use areas at the Property, would be accessible to people with disabilities.

## IV. STATUTORY BACKGROUND

### A. The FHA

15. Congress enacted the FHA design and construction of accessibility requirements as part of a comprehensive revision of the FHA to prohibit discrimination on the basis of disability. The debates and legislative history of the FHA reflect Congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying, "No Handicapped People Allowed." In considering the 1988 disability amendments to the FHA, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible to and useable by people with disabilities. HR. REP. NO. 100-711, at 25(1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186.

16. In response to Congressional findings, the FHA mandated that every multi-family apartment building containing four (4) or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") be subject to certain design and construction requirements. Congress specifically rejected the

approach of requiring only a specific number or percentage of units be fully accessible. Instead, Congress decided that all covered multifamily dwellings units must comply with the Act's design and construction requirements. All ground floor units must comply with the following requirements, as must all units served by an elevator:

a. Public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

b. Doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs;

c. An accessible route into and through the dwelling;

d. Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

e. Reinforcements in bathroom walls that allow for the later installation of grab bars; and

f. Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

17. Congress viewed the accessibility requirements imposed by § 3604(f)(3)(C) as "modest." It did not intend to impose "unreasonable requirements" or a "standard of total accessibility," but rather saw the "basic features" required by § 3604(f)(3)(C) as amounting to "minimal standards" that would be "easy to incorporate in housing design and construction." Furthermore, according to the

House Report, the § 3604(f)(3)(C) requirements could be met without making new multi-family housing “look unusual” and without “significant additional costs.”

18. Pursuant to Congressional authority, the United States Department of Housing and Urban Development (“HUD”) promulgated final FHA design and construction regulations in January 1989, see 24 C.F.R § 100.205 (2008), and published the final Fair Housing Act Accessibility Guidelines on March 6, 1991 (hereinafter “FHAAG”) which incorporates the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for physically handicapped people, A117-I-1986 (hereinafter “ANSI”), see 56 Fed. Reg. 9472 (Mar. 6, 1991), and the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.

19. Defendants failed to comply with the FHAAG and ANSI in the design and construction of the Property. It also failed to comply with any other recognized objective FHA or Americans with Disabilities Act (“ADA”) standard for accessibility.

20. The FHA expressly provides for private enforcement by an "aggrieved person" defined as a person who claims to have been injured by a discriminatory housing practice or believes that such person will be injured by a discriminatory housing practice. 42 U.S.C. § 3613(a)(1)(A) (private right of action); 42 U.S.C. § 3602(i) (defining aggrieved person). In fact, the Supreme Court has stated that private enforcement is the primary method of obtaining compliance with the FHA. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205, 209 (1972).

21. The FHA also provides that a private plaintiff may be awarded actual and punitive damages, as well as a "permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613 (c)(1). Thus, under the FHA, the court may order injunctive relief to remediate the discriminatory barriers at the Property.

22. Notably, the Supreme Court has recognized that discrimination violative of the FHA injures not only the members of a protected class, but also other tenants at an apartment complex who are denied the benefits of associating with those persons. *Trafficante*, 409 U.S. at 209-10. Thus, private enforcement benefits not only those against whom discrimination is directed, but the other residents. *Id*. at 211.

## V. FACTUAL BACKGROUND

### A. The Property

23. The Property is located at 14105 Epply Drive, Jacksonville, FL 32218. The Property consists of approximately 390 total dwelling units. The dwelling units in multiple buildings at the Property are served by elevators.

24. The Property and dwelling units at the Property were designed and constructed for first occupancy after March 13, 1991.

25. The Property contains "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604 (f)(7).

26. The covered multifamily dwellings at the Property are subject to the requirements of 42 U.S.C. § 3604 (f). These include all ground floor units and units served by elevators.

27. Defendant's failure to design and construct the Property in compliance with Section 3604(f)(3)(C) occurred during the design and construction of the Property and continued until all units were leased.

**B. <u>Plaintiff's Visit to the Property.</u>**

28. Plaintiff recently visited the Property on or about July of 2026 and looked at one or more units and public and common areas, including the leasing office, mailroom, and several amenities. Plaintiff toured, and attempted to access to the extent possible, one or more units at the Property.

29. During his visit, Plaintiff was actually and physically prevented, on multiple occasions, from using and accessing specific features of the Property because of the barriers described herein – not merely inconvenienced or made to feel discriminated against, but concretely unable to do things a non—disabled visitor could do. As a direct result, Plaintiff experienced physical difficulty and exertion and increased risk of physical injury attempting to navigate the Property in his wheelchair, was unable to complete his evaluation of the Property on the same terms as a non—disabled prospective tenant, and the barriers he encountered are a deterrent to his applying for and renting an apartment at the Property.

30. When Plaintiff toured a unit's kitchen, he was unable to reach the electrical receptacles above the countertop because they are positioned beyond the maximum allowable side-reach range for a person using a wheelchair. As a result, Plaintiff could not test or use those receptacles during his tour, unlike a non-disabled prospective tenant touring the same unit.

31. Plaintiff also personally encountered barriers that actually prevented his independent use of the Property. Specifically, Plaintiff could not independently access all areas of several in-unit bathrooms. Separately, Plaintiff could not conduct a full turnaround. As a result, Plaintiff could not access all parts of several in-unit bathrooms, unlike a non-disabled prospective tenant touring the same unit.

32. Because Plaintiff could not fully tour or evaluate the units and common areas at the Property on the same terms as a non-disabled prospective tenant – including being physically unable to access all parts of the bathrooms and reach the kitchen outlets in the units he toured – he was denied the same opportunity as non-disabled visitors to gather the information he needed to decide whether to apply to rent at the Property. This concrete denial of an equal opportunity to evaluate the Property caused Plaintiff to feel stigmatized, frustrated, indignant, and emotionally distressed and deprived him of the same full and equal access to the Property that a person who is not wheelchair-dependent would enjoy.

33. The Property and the apartments and facilities designed or constructed or both by Defendants lack various mandatory elements required by the FHA,

necessary to make the Property, apartments, and facilities accessible and usable for people with disabilities.

34. Plaintiff would like to apply for an apartment at the Property or other apartment complex in the area, and intends to apply to rent if the Property is brought into compliance.

35. Absent injunctive relief, Plaintiff will continue to have a real, immediate, and recurring reason – independent of, and predating, this litigation – to be in the immediate vicinity of the Property, and each time he is in the area he will encounter, or be deterred from visiting, the Property because of the barriers that exist there today. This threat of future injury is real and immediate because it is tied to Plaintiff's fixed, ongoing pattern of travel to the immediate vicinity of the Property – not to a generalized or speculative possibility that he might someday return. *See Betancourt v. River Lanes of Titusville, Inc.*, No. 6:23-cv-414, 2023 WL 4405487, at *5-6 (M.D. Fla. July 7, 2023) (finding standing for injunctive relief where the plaintiff, though roughly 1,200 miles from the property, had an independent, family-related reason to be in the area and a stated intent to return by a specific month).

36. Plaintiff is an advocate of the rights of similarly situated persons with disabilities and an advocate for asserting his own civil rights. As a handicapped individual, Plaintiff is concerned whether apartments at the Property are accessible and usable for people with disabilities.

37. Because of the barriers described herein, Plaintiff will experience the same physical difficulty and risk of harm each time he returns to the Property, unless Defendants remedy those barriers.

38. As a direct and proximate result of Defendants' non-compliance with the FHA, Plaintiff – unlike persons without disabilities – was actually and physically unable to access all areas of the bathrooms and reach the kitchen outlets in the units he toured, and was thereby discriminated against in the terms, conditions, and privileges of rental of a unit at the Property and in the provision of services and facilities in connection with such unit.

39. Plaintiff has been injured by Defendants' discriminatory practices and by Defendants' failure to design or construct (or both) apartments with accessible and usable features for people with disabilities as required by the FHA. These injuries – including physical difficulty navigating the Property, out-of-pocket costs, and stigmatic and emotional harm – arose directly from Plaintiff's personal encounters with the discriminatory barriers described herein, and may be remedied by damages and injunctive relief.

40. As a direct and proximate result of Defendants' failure to design and construct the Property with apartments and improvements with accessible and usable features for people with disabilities as required by the FHA, Plaintiff has been effectively excluded from opportunity to live at the Property.

41. Defendants' blatant violations communicate to Plaintiff that he is not welcome in the Property.

42. Plaintiff also incurred specific, quantifiable out-of-pocket costs, in amount to be proven at trial, for fuel and mileage traveling to and visiting the Property on the day of his visit. These costs were a direct and foreseeable consequence of Plaintiff's need to personally visit the Property to evaluate it, and he expects to incur similar, quantifiable costs each time he returns to the Property during the recurring trips to the Orlando area as described herein. Absent injunctive relief, Plaintiff will continue to encounter the same barriers and incur the same categories of expense on each such trip. By reason of his continued encounter of the barriers there exists an inevitable future injury to Plaintiff that may be redressed by injunctive relief to remediate the barriers.

43. In addition to Plaintiff's own injuries described herein, the barriers at the Property will interfere with residents' ability to associate with disabled family members and visitors who encounter the barriers. *See Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209–10 (1972) (recognizing that FHA discrimination injures not only members of the protected class but also others denied the benefit of associating with them).

44. No "bona fide patron" or "bona fide offer" requirement may be read into a statute that does not impose one. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332–34 (11th Cir. 2013). To the extent Defendants contend Plaintiff's motive

for visiting or intending to return to the Property is relevant to standing, Plaintiff's Article III standing here does not depend on that motive; it rests independently on the concrete injuries and real and immediate threat of future injury described herein.

45. Plaintiff personally and physically encountered specific, identified, architectural barriers at the Property and suffered injury of physical difficulty and out-of-pocket expenses as a direct result.

46. Because the barriers at the Property are structural, it is inevitable that Plaintiff and other disabled persons visiting the Property will encounter them, thereby causing them the very injuries sought to be prevented by the FHA's design and construction requirements. The barriers at the Property present a continuing and ongoing pattern and practice of discrimination against disabled persons. Such discrimination creates a presumption that injunctive relief to remedy the discrimination is necessary. *United States v. Balistrieri*, 981 F.2d 916, 934 (7th Cir. 1992).

47. In addition to the concrete injuries described herein, and as a further consequence of Defendants' failure to design and construct the Property with apartments and improvements with accessible and usable features for people with disabilities as required by the FHA, Plaintiff was also deterred from renting an apartment at the Property.

48. Absent injunctive relief to remedy them, the barriers at the Property will exist in perpetuity. Notably, there is a two-year statute of limitations period under the

FHA for a design and construction claim under 42 U.S.C. § 3604(f)(3)(C). Thus, absent injunctive relief in this case, Defendants will have successfully evaded compliance with established federal law and disabled persons will effectively excluded in perpetuity from living at the Property.

49. Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of his rights under the FHA.

**C. <u>FHA Violations.</u>**

50. The Defendants' violations of 42 U.S.C. § 3604(f)(3)(C) at the Property include, but are not limited to, those outlined below. These allegations represent just some of the barriers demonstrating Defendant's failure to design and construct covered units and the public and common use areas in accord with 42 U.S.C. §3604(f)(3)(C) and are not intended as an exhaustive inventory of such violations. Plaintiff anticipates that an inspection of the Property has and will identify additional violations.

51. Defendants have failed to design and construct public and common-use areas that are readily accessible to and usable by people with disabilities in compliance with 42 U.S.C. § 3604(f)(3)(C)(i) and 24 C.F.R. § 100.205(c)(1) (2008).

52. Defendants have failed to design and/or construct kitchens and bathrooms in compliance with 42 U.S.C. § 3604 (f)(3)(C)(iii)(IV) and 24 C.F.R. § 100.205(c)(3)(ii) (2008). For example:

a. The lavatory cabinets in the in-unit bathrooms lacked knee toe clearance. Plaintiff attempted to access the lavatory sink in the

bathrooms but was unable to because of the lack of knee toe clearance. Defendants improperly designed and constructed the in-unit bathrooms in violation of the FHA, causing there to be a lack of knee toe clearance. This deterred Plaintiff from renting a unit at the Property because he was unable to independently access the bathroom sinks.

b. The kitchen sinks in the in-unit kitchens lacked knee toe clearance. Plaintiff attempted to access the sink in the kitchens but was unable to because of the lack of knee toe clearance. Defendants improperly designed and constructed the in-unit kitchens in violation of the FHA, causing there to be a lack of knee toe clearance. This deterred Plaintiff from renting a unit at the Property because he was unable to independently access the kitchen sinks.

c. Several of the in-unit bathrooms lacked grab bars. This deterred Plaintiff from renting a unit at the Property because he would not be able to independently use the toilet or shower without grab bars.

d. The in-unit bathrooms were too small for Plaintiff to conduct a full turn around in his wheelchair, in violation of the FHA. Because the bathrooms were too small, Plaintiff was unable to access the toilet. Plaintiff attempted to, but could not, transfer from his wheelchair to the toilet in the in-unit bathrooms. Defendants improperly designed and constructed the in-unit bathrooms in violation of the FHA, causing there to be a lack of turn-around space. This deterred Plaintiff from

renting a unit at the Property because he was unable to access the toilet in the prospective unit.

e. The in-unit showers contained a door that was too narrow, in violation of the FHA. Plaintiff is unable to use a shower that is too narrow to enter. Plaintiff attempted to, but could not enter the shower because the glass door was too narrow. This violation is due to Defendants' design and construction of the property. Plaintiff was deterred from renting a unit at the Property because he would be unable to independently access the shower in his prospective unit.

f. The microwaves in the in-unit kitchens were too high, in violation of the FHA. Plaintiff attempted to reach the microwave but was unable to because Defendants failed to design and construct them in compliance with the FHA. Plaintiff was deterred from renting a unit at the Property because he would be unable to independently access the microwave in his prospective unit.

53. Defendants have failed to design or construct or both light switches, electrical outlets, thermostats, and other environmental controls in accessible locations in compliance with 42 U.S.C. § 3604 (f)(3)(C)(iii)(II) and 24 C.F.R. § 100.205(c)(3)(ii) (2008).

a. The light switches and electrical outlets in the in-unit kitchens were out of reach for Plaintiff. Plaintiff attempted to reach the light switches and electrical outlets and was unable to do so because of

Defendants' violation of the FHA in the construction and design of the units. This deterred Plaintiff from renting a unit at the Property because he would not be able to independently use the kitchen within his prospective unit.

54. Further, by failing to provide the accessible and useable features required by 42 U.S.C. § 3604(f)(3)(C) at the Property for people with physical disabilities, including but not limited to those outlined above, Defendants have violated 42 U.S.C. § 3604(f)(2) by discriminating against them in the terms, conditions or privileges of the rental of dwellings.

## VI. CAUSE OF ACTION
## For violation of the FHA, 42 U.S.C. § 3601, et seq.

55. The allegations in the preceding paragraphs are incorporated by reference.

56. The Property contains residential apartment units that are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(b).

57. Plaintiff has been injured by a discriminatory housing practice, and Plaintiff also believes that he will be injured by discriminatory housing practices that are about to occur and will continue occurring at the Property.

58. At the Property, all ground-floor units and upper floor units served by elevators not in townhomes are "covered multifamily dwellings" within the meaning of 42 U.S.C.§ 3604(f)(7)(A), were built for first occupancy after March 13, 1991, and

are subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHA. The public- and common-use areas of the Property are also subject to the design and construction requirements of 42 USC. § 3604(f)(3)(C).

59. Through the actions and inactions described above, the Defendants have:

a. Discriminated against Plaintiff and other persons because of their disabilities in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

b. failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205 (2008).

60. Defendants' discriminatory conduct has caused injury and damaged Plaintiff.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a. A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of the FHA, described above, and the relevant implementing regulations of the FHA;

b. An injunction, pursuant to 42 U.S.C. § 3613(c)(1)(a), enjoining Defendants, their respective officers, directors, employees, agents, successors, assigns

and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

1. with regard to the Property, failing or refusing to bring the covered dwelling units and the public use and common use areas into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), the Americans with Disabilities Act ("ADA") and the applicable regulations; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them; failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and
2. failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and
3. failing or refusing to take such steps as will eliminate, to the fullest extent practicable, the lingering effects of the Defendant's unlawful housing practices.

c. An injunction enjoining Defendant from failing or refusing to permit the survey of any of their covered properties that were designed and/or built by the

Defendants and any retrofits ordered by the Court to be made at such property, to also comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the Defendants;

d. Award such damages as would fully compensate Plaintiff for his injuries incurred as a result of the Defendants' discriminatory housing practices and conduct, pursuant to 42 U.S.C. § 3613(c)(1)(a);

e. Award such punitive damages against Defendants as is proper under law, pursuant to 42 U.S.C. § 3613(c)(1)(a);

f. Payment of costs of suit;

g. Payment of reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 3613(c)(2), and other principles of law and equity; and

h. The provision of whatever other relief the Court deems just, equitable and appropriate.

## **VIII**. **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury of all issues so triable.

Dated: September 2, 2026

Respectfully Submitted,

**VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome, II
Jeffrey L. Newsome, II; FBN: 1018667
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
Pamela G. Levinson, FBN: 538345

Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
jnewsome@vandwlaw.com
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
plevinson@vandwlaw.com
cbrochu@vandwlaw.com
ckoerner@vandwlaw.com
jesquibel@vandwlaw.com

*/s/ Nicholas Bragorgos*
NICHOLAS BRAGORGOS (*PRO HAC VICE FORTHCOMING*)
McNabb, Bragorgos, Burgess & Sorin, PLLC
81 Monroe Avenue
Sixth Floor
Memphis, TN 38103
901-624-0640
901-624-0650 facsimile
Nbragorgos@mbbslaw.com

*Attorneys for Plaintiff*